# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| BAYKEEPER<br><br>                    Plaintiff,<br><br>        v.<br><br>UNITED STATES PIPE AND FOUNDRY COMPANY, LLC<br><br>                    Defendant. | Case No. C13-2189<br><br>Honorable Laurel Beeler<br><br>~~[PROPOSED]~~ CONSENT DECREE |

## CONSENT DECREE

WHEREAS, Baykeeper is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, United States Pipe and Foundry Company, LLC ("U.S. Pipe"), operates an industrial facility that manufactures ductile iron pipe.  U.S. Pipe's facility is located at 1295 Whipple Road in Union City, CA ("Facility").  Baykeeper and U.S. Pipe are collectively referred to herein as the "Parties";

WHEREAS, storm water discharges associated with industrial activity at the Facilities are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board ("SWRCB")], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), and any future iterations of this permit which are adopted by the SWRCB, issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter the "Permit").  These

industrial activities include, *inter alia*, manufacturing and coating of iron pipe, transporting materials on and off site, storage of waste and raw materials, truck and equipment operation, scrap metal receiving, and other industrial activities related to the operation of a pipe manufacturing facility;

WHEREAS, the Permit includes the following requirements for all permittees, including U.S. Pipe: 1) develop and implement a storm water pollution prevention plan ("SWPPP"), 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP; and, 4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on March 8, 2013, Baykeeper served U.S. Pipe, U.S. Pipe's registered agent, the Administrator of the Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the San Francisco Bay Regional Water Quality Control Board ("Regional Board"), the U.S. Attorney General, and the Regional Administrator of the EPA (Region 9) with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A), alleging violations of the Act and the Permit at the Facilities;

WHEREAS, Baykeeper filed a complaint ("Complaint") against U.S. Pipe in the United States District Court, Northern District Court of California on April 30, 2012, entitled *Baykeeper v. United States Pipe and Foundry Company, LLC* (Case No. 3:13-cv-02189-LB);

WHEREAS, Baykeeper contends in its 60-Day Notice and Complaint that, among other things, U.S. Pipe has repeatedly discharged polluted storm water in violation of the Permit and the Clean Water Act, and U.S. Pipe denies all allegations set forth in the 60-Day Notice and Complaint and contends that Baykeeper's Complaint should be dismissed;

WHEREAS, the Parties, through their authorized representatives and without either adjudication of Baykeeper's claims or any admission by U.S. Pipe of any alleged violation or other wrongdoing, believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I. COMMITMENTS OF U.S. PIPE

1. In order to reduce or prevent pollutants associated with industrial activity from discharging via storm water to the waters of the United States, U.S. Pipe shall implement appropriate structural and non-structural Best Management Practices ("BMPs"), as required by the Permit, as described more fully below.

2. **Installation of Storm Water Retention Pond**

    a. <u>Data Gathering</u>. Assuming that the Effective Date of the Agreement is before December 31, 2013,[1] within forty-five (45) days of the Effective Date of the Agreement, U.S. Pipe shall perform the following tasks:

        i. U.S. Pipe shall install a rain gauge at the site along with flow monitors at the current storm water outfalls identified in Exhibit A.

---

[1] Provided, however, that if this settlement is not effective by December 31, 2013, the compliance dates set forth in this Section 2 of the Agreement shall shift by one calendar year.

The rain gauge and flow monitors shall stay in place until there are a) at least four storm events producing at least 0.25-inches of rainfall or b) May 31, 2014, whichever occurs first.

ii.    During the same period, U.S. Pipe shall also collect rain data from two nearby NOAA rain gauges with station codes GRPC1 (Garin Park, Union City) and IPWC1 (Industrial Pump Station, Hayward). Precipitation data from these stations shall be compared against data collected on-site and be used to inform runoff calculations for the purposes of designing an on-site storm water retention pond.

iii.    U.S. Pipe shall provide to Baykeeper a data report of the information obtained during the data gathering period by June 30, 2014.  The report shall include rainfall data from on-site rain gauges and NOAA stations GRPC1 and IPWC1, and on-site flow monitoring data. This report shall also include rainfall-runoff modeling results indicating, at a minimum, volumetric requirements of the detention basin to fully retain runoff expected from the 85th, 90th, and 95th percentile 24-hour storm events. The report shall document all assumptions and modeling methods used.

iv.    Within fourteen (14) days of receiving the data report, Baykeeper shall have the opportunity to comment on the data prior to the final designation of design criteria for the retention basin.

b. <u>Design</u>. Based on an analysis of the data obtained as set forth in paragraph 2.a.,[2] U.S. Pipe shall design a storm water retention pond for subsequent infiltration, evaporation, or re-use, in accordance with the volume of runoff produced by the 95th percentile 24-hour storm event, determined as the maximized capture runoff volume for the Facility, from the formula recommended in the Water Environment Federation's Manual of Practice.[3] U.S. Pipe shall also provide maintenance specifications for the retention pond, which shall include without limitation a provision for scraping and disposal of the top five (5) centimeters of soil and sediment from the base of the pond every five (5) years, to avoid build-up of soil contaminants. These soils shall be tested prior to disposal to determine whether removed sediment must be disposed of as hazardous material. A copy of design and maintenance specifications for the pond shall be provided to Baykeeper by August 30, 2014.

c. <u>Installation</u>. Following the submittal of the design and maintenance specifications for the pond shall to Baykeeper by August 30, 2014, U.S. Pipe shall install the retention pond in accordance with the retention pond design set forth in paragraph 2(b) within ninety (90) days of receiving all local, State, and Federal governmental and regulatory approvals necessary to complete the retention pond construction. U.S. Pipe shall use best

---

[2] If there are less than four storm events producing at least 0.25-inches of rainfall, or if U.S. Pipe determines that the rain events are not sufficient to properly design the retention pond, the compliance dates set forth in this Section 2 of the Agreement shall shift by one calendar year. In such event, U.S. Pipe shall provide written notice to Baykeeper by June 15, 2014.

[3] Water Environment Federation (WEF), Manual of Practice No. 23/ ASCE Manual of Practice No. 87, cited in chapter 5 (1998 Edition) and cited in Chapter 3 (2012 Edition).

efforts to seek approval for all such local, State, and Federal governmental

and regulatory approvals necessary to complete the retention pond

construction.  U.S. Pipe agrees to provide Baykeeper an update every

ninety (90) days regarding such pending approvals.

d.      <u>Certification</u>.  Within thirty (30) days of the completion of the installation

of the retention pond, U.S. Pipe shall notify Baykeeper via e-mail and

arrange a site visit by Baykeeper to visit the Facility and view the

retention pond to confirm its installation.  Both parties shall use best

efforts to complete this site visit within thirty (30) days of receipt of the

notice of the specified above.  Upon completion of this visit and

verification by Baykeeper that the retention pond is properly installed, this

Agreement shall be terminated.

3.      **Site Map**:  within thirty (30) days of the Effective Date, U.S. Pipe shall update

the Site Maps included in its SWPPP for the Facility to depict changes made to the Facility,

including those described in paragraph 2 of this Consent Decree.

4.      **Maintenance of BMP Structural and Non-Structural Controls**:  Beginning on

the Effective Date, U.S. Pipe shall maintain all structural and non-structural BMPs at the

Facility, including but not limited to catch basin filters, wattles, and a regular sweeping program,

at the Facility in good operating condition and shall promptly repair any damaged or degraded

structural BMPs.

5.      **Amendment of Storm Water Pollution Prevention Plan ("SWPPP")**:

a.      Following the installation of the retention pond set forth in paragraph 2.c.

above, U.S. Pipe shall amend its SWPPP to incorporate the requirements

and BMPs set forth in Paragraphs 2 through 4 of this Consent Decree and thereafter submit the updated SWPPP to Baykeeper within ten (10) business days.

b.      Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, U.S. Pipe shall make all of Baykeeper's changes to the amended SWPPP unless U.S. Pipe timely invokes the Dispute Resolution described below in Paragraph 10.  Compliance with the SWPPP, as amended in accordance with this paragraph provision, shall at all times be a requirement of this Consent Decree.

6.      **Reports**:  During the Term of this Consent Decree, U.S. Pipe shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facilities' compliance with the Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail, if feasible, or by U.S. Mail when electronic transmission is not feasible, at the time the documents are due to be submitted to the Regional Water Board or State Water Board.

**II.      MITIGATION, FEES, AND COSTS**

7.      **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in Baykeeper's Notice and Complaint, within thirty (30) days of the Effective Date, U.S. Pipe shall pay the sum of forty-five thousand dollars ($45,000) to  the Rose Foundation for the Environment, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed.  The Rose Foundation shall report the grant funding made with the

tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to the Rose Foundation for the Environment, 1970 Broadway Suite # 600, Oakland, CA 94612-2218 Attn: Tim Little, within thirty (30) days of the Effective Date, with notice to Baykeeper.

       8.     **Reimbursement of Fees and Costs**:  U.S. Pipe shall reimburse Baykeeper in the amount of thirty-five thousand dollars ($35,000) to help defray Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facilities related to this Consent Decree, bringing these matters to U.S. Pipe's attention, and negotiating a resolution of this action in the public interest. U.S. Pipe shall tender said payment, payable to Baykeeper, within thirty (30) days of the Effective Date.

       9.     **Compliance Monitoring Funds:**  U.S. Pipe shall reimburse Baykeeper four thousand dollars ($4,000) for costs and fees associated with monitoring U.S. Pipe's compliance with this Consent Decree.  The compliance monitoring fund payment shall be made payable to Baykeeper within thirty (30) days after the Effective Date.

       10.     **Dispute Resolution**: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least ten (10) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including

bringing a motion before the United States District Court for the Northern District of California

for the limited purpose of enforcing the terms of this Consent Decree.  The parties shall be

entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in

the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law

interpreting such provisions.

### III.   JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE

11.    **Jurisdiction.**  For the purposes of this Consent Decree, the Parties stipulate that

the United States District Court of California, Northern District of California, has jurisdiction

over the Parties and subject matter of this Consent Decree.  The Parties stipulate that venue is

appropriate in the Northern District of California and that U.S. Pipe will not raise in the future as

part of enforcement of this Consent Decree whether Baykeeper has standing to bring the

Complaint or any subsequent action or motion pursuant to the Dispute Resolution procedures

herein.

12.    **Submission of Consent Decree to DOJ.**  Within three (3) business days of

receiving all of the Parties' signatures to this Consent Decree, Baykeeper shall submit this

Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review

consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar

days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review

period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the

Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

### IV.   WAIVER, RELEASES AND COVENANTS NOT TO SUE

13.    **Baykeeper Waiver and Release of Noticed Parties and Covenant Not to Sue**:

Upon the Effective Date, Baykeeper, on its own behalf and on behalf of its officers, directors,

employees, parents, subsidiaries, affiliates and each of their successors and assigns and its agents, attorneys, and other representatives covenants not to sue U.S. Pipe or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, or other representatives with respect to any storm water discharges from the Facilities that arose before or may arise during the Term of this Consent Decree.  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns, and its and agents, attorneys, and other representatives, releases U.S. Pipe or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

14. **U.S. Pipe's Waiver and Release of Baykeeper**:  U.S. Pipe, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns, or its agents, attorneys, and other representatives, releases Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns and its agents, attorneys and other representatives from, and waives all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint for pollution from storm water discharges at the Facility, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

15.   **No Admission**:  The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation.  Nothing in this Consent Decree shall be construed as, and U.S. Pipe expressly does not intend to imply, any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree constitute or be construed as an admission by U.S. Pipe of any fact, finding, conclusion, issue of law, or violation of law.  However, this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Consent Decree.

### V.   MISCELLANEOUS PROVISIONS

16.   **Effective Date**:  The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

17.   **Term of Consent Decree**:   This Consent Decree shall continue in effect until Baykeeper has confirmed installation of the retention pond as described above in Paragraph 2(d), at which time the Consent Decree, and all obligations under it, shall automatically terminate.

18.   **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

19.   **Facsimile Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

20.   **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

21.     **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

22.     **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

23.     **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

24.     **Choice of Law**:  This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

25.     **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.  It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

26.     **Negotiated Agreement**:  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

27.     **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

28.     **Assignment**:  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

29.     **Mailing of Documents to Baykeeper/Notices/Correspondence**:  Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Baykeeper:

Andrea Kopecky
San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA 94103
E-mail:  andrea@baykeeper.org

With copies sent to:

Douglas Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
E-mail:  doug@lozeaudrury.com

Unless requested otherwise by U.S. Pipe, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to U.S. Pipe pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

U.S. Pipe:

David Hiestand
Plant Manager
United States Pipe & Foundry Company
1295 Whipple Road
Union City, CA 94587
Email: dhiestand@uspipe.com

With copies sent to:

Scot Aler
Director – Environmental Services
United States Pipe & Foundry Company
2023 St. Louis Avenue
Bessemer, AL 35020
Email: saler@uspipe.com

Gary S. Rovner
Foley & Lardner LLP
321 N. Clark Street
Suite 2800
Chicago, IL 60654
E-mail: GRovner@foley.com

Adam G. Sowatzka
King & Spalding
1180 Peachtree Street, N.E.
Atlanta, GA 30309
E-mail: asowatzka@kslaw.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

30.     **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, flood, and restraint by court order or public authority. "Circumstances beyond the

Party's control" shall not include normal inclement weather, economic hardship or inability to pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

31.     If for any reason the DOJ or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

32.     The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit it to the Court for its approval and entry as a final judgment.

[SIGNATURES TO APPEAR ON THE FOLLOWING PAGE]

BAYKEEPER

Date: October 30, 2013

_Andrea L. Kopecky_
Andrea Kopecky
Staff Attorney, San Francisco Baykeeper


United States Pipe and Foundry Company, LLC

Date: October 30, 2013

_Bob Zeeb_
Bob Zeeb
Vice President of Operations

APPROVED AND SO ORDERED, this __13__ day of _ December 2013          _.


UNITED STATES MAGISTRATE JUDGE
LAUREL BEELER

_____

# Exhibit A



Site Map — U.S. Pipe and Foundry Company, 1295 Whipple Road, Union City, California. Figure 1.